UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

              Plaintiff,

v.

Tony Lee Lussier,

              Defendant.

Case No. 21-cr-145 (PAM/LIB)

**ORDER AND
REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge, pursuant to a general assignment made in accordance with 28 U.S.C. § 636, upon the Government's Motion for Discovery, [Docket No. 14], as well as, Defendant Tony Lee Lussier's Motion to Suppress Tribal Court Guilty Plea, [Docket No. 46]; Motion to Suppress Statements, [Docket No. 48]; Motion for Disclosure of Grand Jury Transcripts, [Docket No. 49]; Motion for Jencks Act Materials, [Docket No. 50]; Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51]; Second Motion to Dismiss, [Docket No. 65]; Motion for Discovery and Inspection, [Docket No. 66]; Supplemental Motion to Compel Attorney for Government to Disclose Favorable Evidence, [Docket No. 67]; Motion to Retain Rough Notes, [Docket No. 68]; Motion for Ex Parte Review of Alleged Victim's Medical Records, [Docket No. 69]; and Motion for Disclosure of Alleged Victim's Sex Partners. [Docket No. 70].[1] The Court held a Motions Hearing on July 8, 2022, regarding the parties' pretrial motions.

At the Motions Hearing, the parties requested, and were granted, the opportunity to submit supplemental briefing. Upon the completion of that briefing, Defendant's Motion to Suppress Tribal Court Guilty Plea, [Docket No. 46]; Motion to Suppress Statements, [Docket

---

[1] In his supplemental memorandum, Defendant withdrew his initial Motion to Dismiss the Indictment. (Def.'s Mem. [Docket No. 86] at 12). Thus, Defendant's initial Motion to Dismiss, [Docket No. 47], is **TERMED**.

No. 48]; Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51]; Second Motion to Dismiss, [Docket No. 65]; Supplemental Motion to Compel Attorney for Government to Disclose Favorable Evidence, [Docket No. 67]; Motion for Ex Parte Review of Alleged Victim's Medical Records, [Docket No. 69]; and Motion for Disclosure of Alleged Victim's Sex Partners, [Docket No. 70], were taken under advisement.

For the reasons discussed herein, the Government's Motion for Discovery, [Docket No. 14], is **GRANTED**, as set forth herein; Defendant's Motion for Disclosure of Grand Jury Transcripts, [Docket No. 49], is **DENIED**; Defendant's Motion for Jencks Act Materials, [Docket No. 50], is **DENIED**; Defendant's Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51], is **GRANTED**, as set forth herein; Defendant's Motion for Discovery and Inspection, [Docket No. 66], is **GRANTED**, as set forth herein; Defendant's Supplemental Motion to Compel Attorney for Government to Disclose Favorable Evidence, [Docket No. 67], is **DENIED**; Defendant's Motion to Retain Rough Notes, [Docket No. 68], is **GRANTED**, as set forth herein; Defendant's Motion for Ex Parte Review of Alleged Victim's Medical Records, [Docket No. 69], is **DENIED**; and Defendant's Motion for Disclosure of Alleged Victim's Sex Partners, [Docket No. 70], is **DENIED**.

Further, for reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Tribal Court Guilty Plea, [Docket No. 46], be **DENIED as moot**; Defendant's Motion to Suppress Statements, [Docket No. 48], be **DENIED**; and Defendant's Second Motion to Dismiss, [Docket No. 65], be **DENIED**.

I.    **Background and Statement of Facts**

    **A.  Background**

Defendant is charged with one (1) count of Assault with a Dangerous Weapon in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153(a), as well as, one (1) count of Sexual Abuse–Incapable Victim in violation of 18 U.S.C. §§ 2242(2), 1151, and 1153(a). (Indictment [Docket No. 1]).

    **B.  Facts**[2]

On September 27, 2020, Defendant was arrest by officers[3] from the Red Lake Police Department. (Tr. 21).[4] Upon his arrest, Defendant was taken to the Red Lake jail. (Tr. 21).

The following morning on September 28, 2020, Defendant was brought to an interview in the Red Lake jail with Federal Bureau of Investigation Special Agent Ryan Nilson (hereinafter "SA Nilson") and Red Lake Criminal Investigator Jonathan Richards. (Tr. 21–22). The entirety of the interview was audio recorded. (Tr. 23; Gov't Ex. 1).[5]

As Defendant enters the interview room, SA Nilson asked Defendant how he was doing. (Gov't Ex. 1 at 0:00–0:01). Defendant responded, "not good, not good at all," and he asked SA Nilson why he was there. (Id.). SA Nilson explained that he was there to speak with Defendant regarding an ongoing investigation. (Id. at 00:1–00:07). SA Nilson explained that there was an "open federal investigation" and a "Tribal investigation." (Id.).

---

[2] The facts contained in this section are derived from the testimony of Federal Bureau of Investigation Special Agent Ryan Nilson at the July 8, 2022, Motions Hearing, as well as, the Government's exhibits admitted in the present case.

[3] The record now before the Court does not identify the Red Lake officers who arrested Defendant.

[4] Throughout this Order and Report and Recommendation, the Court refers to the transcript of the July 8, 2022, Motions Hearing by the abbreviation "Tr." (Transcript [Docket No. 84]).

[5] Government's Exhibit 1 is an audio recording of the September 28, 2020, interview. (Gov't Ex. 1). At the Motions Hearing, the Government, without objection, offered the audio recording into evidence as Government's Exhibit 1. (Tr. 7). Citations to Government's Exhibit 1 are provided in the HH:MM format.

SA Nilson further explained that before he could ask questions of Defendant, SA Nilson needed to inform Defendant of his rights. (Id.). SA Nilson then read to Defendant the rights listed under the "Your Rights" heading on a Federal Bureau of Investigation Advice of Right Form (Form FD-395). (Id.; see, Gov't Ex. 2).[6] After reading the rights from the Advice of Rights form, SA Nilson asked Defendant if he understood his rights, and Defendant responded in the affirmative. (Gov't Ex. 1 at 00:04–00:07). SA Nilson then asked Defendant to read the portion of the Advice of Rights form under the "Consent" heading, and Defendant did so. (Id.). After Defendant read aloud the "Consent" portion of the form, SA Nilson asked Defendant if he was willing to talk with the officers, and Defendant responded in the affirmative. (Id.). Defendant then signed the Advice of Rights form, and Criminal Investigator Richards signed the Advice of Rights form as a witness. (Gov't Ex. 2).

SA Nilson and Defendant then began discussing the fact that Defendant was suspected of committing the alleged conduct underlying the present case. (Gov't Ex. 1 at 00:05–00:07). Approximately one hour and seventeen minutes into the interview, Defendant asked if he was being "charged federally." (Id. at 1:17–1:21). SA Nilson responded that Defendant was not being charged "federally" at that time. (Id.). SA Nilson explained that he was investigating to collect evidence and information to send to the United States Attorney's office where it would be decided whether Defendant would be charged with the violation of a federal crime. (Id.). SA Nilson and Criminal Investigator Richards informed Defendant that he had been charged in Tribal Court. (Id.). SA Nilson and Criminal Investigator Richards explained that although they "work together" as "liaisons" in investigations for each of their organizations, they were "different agencies," so it was not necessarily true that there would be a federal indictment

---

[6] Government's Exhibit 2 is the Federal Bureau of Investigation Advice of Rights form (FD-395) from the September 28, 2020, interview. (Gov't Ex. 2). At the Motions Hearing, the Government, without objection, offered the Advice of Rights form into evidence as Government's Exhibit 2. (Tr. 7).

merely because Defendant had been charged in Tribal Court. (Id.). The interview lasted approximately one hour and thirty-five minutes. (Id.).

On September 30, 2020, Defendant was brought for an arraignment before a Judge in Red Lake Tribal Court. (Ex. 5).[7] Defendant's Tribal Court arraignment was continued to and completed on October 1, 2020. (Ex. 6).[8]

On March 30, 2021, Defendant entered into a plea agreement in Tribal Court which included the resolution of the Tribal Court charges related to the alleged conduct underlying the present case. (Gov't Ex. 4).[9] Defendant was sentenced to 365 days of incarceration in Red Lake jail with credit for time served. (Gov't Ex. 4).

## II.    Government's Motion for Discovery. [Docket No. 14].

The Government seeks discovery pursuant to Rules 16(b), 12.1, 12.2, 12.3, and 26.2 of the Federal Rules of Criminal Procedure, as well as, Rules 702, 703, and 705 of the Federal Rules of Evidence. (See, Gov't Mot. for Discovery [Docket No. 14]).

### A.  Inspection and Copying Pursuant to Rule 16(b)

#### 1.  Documents and Tangible Objects

The Government requests that the Court order Defendant to permit inspection and copying of all books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

---

[7] Government's Exhibit 5 is an audio recording of Defendant's September 30, 2020, arraignment in Tribal Court. (Gov't Ex. 5). At the Motions Hearing, the Government, without objection, offered the audio recording into evidence as Government's Exhibit 5. (Tr. 7).

[8] Government's Exhibit 6 is an audio recording of Defendant's October 1, 2020, continued arraignment in Tribal Court. (Gov't Ex. 6). At the Motions Hearing, the Government, without objection, offered the audio recording into evidence as Government's Exhibit 6. (Tr. 7).

[9] Government's Exhibit 4 is a copy of the documents signed at Defendant's March 30, 2021, plea hearing in Tribal Court. (Gov't Ex. 4). At the Motions Hearing, the Government, without objection, offered the audio recording into evidence as Government's Exhibit 4. (Tr. 7).

Defendant did not object to the request. The motion is granted, and Defendant shall disclose any such responsive materials no later than fourteen (14) days before trial.

### 2. Reports of Examinations and Tests

The Government further requests all results and reports of physical or mental examinations and of scientific tests or experiments made in connection with the above captioned matter, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial.

Defendant did not object to this request. Defendant shall disclose any such responsive materials no later than fourteen (14) days before trial.

### 3. Expert Testimony

The Government also seeks a written summary of expert testimony Defendant intends to use under Rule 702, 703, and 705 of the Federal Rules of Evidence as evidence at trial. The Government asserts that the summary must describe the opinions of the expert witnesses, the basis and reasons therefore, and the witnesses' qualifications.

The Government requests that such expert disclosures for both parties be made thirty days before trial with rebuttal expert reports being produced no later than ten days before trial. At the Motions Hearing, Defendant agreed to the Government's suggested timing for the disclosure of expert reports.

The motion is granted. Defendant shall disclose any such responsive materials for experts he intends to call in his case-in-chief at trial no later than thirty (30) days before trial. Defendant shall disclose any such responsive materials related to rebuttal expert reports no later than ten (10) days before trial.

### B.  Notice of Alibi Defense

Pursuant to Federal Rule of Criminal Procedure 12.1, the Government seeks an Order from the Court requiring Defendant, if he intends to claim alibi as a defense, to state the specific place or places at which Defendant claims to have been at the time of the alleged offenses in the above captioned matter and the names and addresses of the witnesses upon whom Defendant intends to rely to establish such alibi.

Defendant did not object to this request. The motion is granted, and Defendant shall give notice of same pursuant to Rule 12.1 as soon as practicable and in no event later than twenty-one (21) days before trial.

### C.  Notice of Insanity/Mental Illness Defense

In addition, pursuant to Federal Rule of Criminal Procedure 12.2, the Government requests the Court to order Defendant, if he intends to rely upon the defense of insanity or introduce expert testimony relating to a mental disease or defect or any other mental condition of Defendant relevant to the issue of guilt, to provide the Government notice of such defense.

Defendant did not object to this request. The motion is granted, and Defendant shall give notice of same pursuant to Rule 12.2 as soon as practicable and in no event later than twenty-one (21) days before trial.

### D.  Witness Statements

The Government seeks all statements within Defendant's possession or control of any witness that Defendant intends to call in connection with a suppression hearing, detention hearing, trial, or sentencing.

Defendant did not object to this request. The motion is granted. To the extent Defendant has statements in his possession or control of any witness that he intends to call to testify in

connection with a suppression hearing, detention hearing, trial, or sentencing, Defendant shall disclose such statements to the Government no later than three (3) business days before such witness is called to testify.

### III.    Defendant's Motion for Disclosure of Grand Jury Transcripts. [Docket No. 49].

Defendant moves the Court for disclosure of <u>all</u> of the minutes and transcripts of the Grand Jury proceedings related to the present case. (Def.'s Mot. [Docket No. 49]. Defendant ostensibly seeks immediate disclosure.

The Government objects to an Order of this Court compelling it to produce all Grand Jury materials. The Government argues that it cannot be required to produce said materials at this time.

The Courts have long recognized that proper functioning of the grand jury system depends upon protecting the secrecy of those proceedings. <u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 411 U.S. 211, 218 (1979). In order to justify disclosure of grand jury materials, a defendant <u>must</u> make a showing of a "particularized need." <u>Thomas v. United States</u>, 597 F.2d 656, 658 (8th Cir. 1979); <u>see</u>, <u>United States v. Dukes</u>, No. 15-cv-165 (JRT/LIB), 2015 WL 10382395, at *7 (D. Minn. Nov. 10, 2015); <u>Price v. Viking Press, Inc.</u>, 115 F.R.D. 40, 42 (D. Minn. 1987).

Defendant here fails to offer any facts or circumstances that tend to establish the requisite <u>particularized</u> need. (<u>See</u>, Def.'s Mot. [Docket No. 49]). The only assertion regarding any need that Defendant alleges is a passing reference to the generalized need for access to the Grand Jury materials to prepare the defense in this case, including helping make credibility determinations at any evidentiary hearing. (<u>See</u>, <u>Id.</u>). The general preparation of a defense alone cannot be said to

be a particularized need. See Thomas, 597 F.2d at 658 ("Such 'fishing expeditions' do not provide sufficient grounds for disclosure prior to or at trial.").

Accordingly, Defendant's Motion for Disclosure of all Grand Jury Transcripts, [Docket No. 49], is denied.

## IV.    Defendant's Motion for Early Disclosure of Jencks Act Materials. [Docket No. 50].

Defendant moves the Court for an Order requiring the Government to disclose materials covered by the Jencks Act at least seven days before trial. (See, Def.'s Mot. [Docket No. 50]).

The Government objects to Defendant's motion arguing that it cannot be required to make pretrial disclosure of Jencks Act materials.

The Court recognizes the practical effect that disclosing Jencks Act materials only after a witness has actually testified in the Government's case-in-chief creates the prospect for unnecessary continuances and delays in the trial while the Defense is permitted a reasonable time to review the late disclosures. However, Defendant provides no citation to authority which would allow the Court to require early disclosure of Jencks Act material. Generally, the case law provides that the Court may not require the Government to make early disclosure of Jencks Act material. See, e.g., United States v. Alexander, 736 F. Supp. 968, 981 (D. Minn. 1990); United States v. White, 750 F.2d 726, 727 (8th Cir. 1984); United States v. Wilson, 102 F.3d 968, 971–72 (8th Cir. 1996).

Accordingly, Defendant's Motion for Early Disclosure of Jencks Act Material, [Docket No. 50], is denied.[10]

---

[10] Nevertheless, at the July 8, 2022, Motions Hearing, the Government voluntarily agreed to provide Jencks Act material to the Defense by no later than fourteen days before trial. The Court encourages such voluntarily agreements.

V.    **Defendant's Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51], and Defendant's Supplemental Motion to Compel Attorney for the Government to Disclose Favorable Evidence. [Docket No. 67].**

Beginning with an analysis of Defendant's Supplemental Motion to Compel Attorney for the Government to Disclose Favorable Evidence, [Docket No. 67], Defendant seeks the disclosure of "[c]ommunications between federal and Red Lake Tribal authorities before and during the Red Lake prosecution of" Defendant; "[e]vidence of communications between the United States Attorney's office and Red Lake prosecutors concerning [Defendant's] case"; "[e]vidence of a sharing of prosecutorial duties between the United States Attorney's office and Red Lake prosecutors"; and "[e]vidence of [his] treatment in the Red Lake jail . . . ." (Def.'s Mot. [Docket No. 67]). Defendant suggests that such disclosure is required, pursuant to Brady and its progeny, because this "serial prosecution" violates his right to equal protection under the laws, as well as, his right to due process because impermissible collusion occurred when the Federal Bureau of Investigation and Red Lake Police Department allegedly "investigated the alleged crime together" with "intention … always" to charge Defendant in Tribal Court and Federal Court. (See, Id.).

Under Brady and its progeny, the prosecution has a duty to disclose evidence favorable to an accused, and the failure to disclose such evidence violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting Brady, 373 U.S. at 87). In Strickler, the Court also set out the three elements of a true Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. Strickler, 527 U.S. at 263–80.

10

In the present case, Defendant's mere speculative or conclusory allegations that an impermissible, collusive relationship existed between Red Lake law enforcement and the federal government does not justify the production of all the requested communications under either <u>Brady</u> and its progeny or under Rule 16.[11] Indeed, Defendant fails to point to any factual evidence in the record that the Government utilized Red Lake law enforcement as a "mere tool" to prosecute Defendant in this Federal Court. Defendant's assertion that "it is apparent, from this prosecution, that the government's intention was always to take this case 'federal,'" is pure conjecture. (<u>See</u>, Def.'s Supp. Mot. [Docket No. 67]). Indeed, the record now before the Court, including the audio recording of SA Nilson and Criminal Investigator Richards' interview of Defendant at the Red Lake jail, merely highlights typical, routine cooperation between Red Lake law enforcement and federal law enforcement authorities. <u>See</u>, <u>United States v. Williams</u>, 104 F.3d 213, 216 (8th Cir. 1997) (noting that both the Supreme Court, in <u>Bartkus v. Illinois</u>, 359 U.S. 121, 123 (1959), and the Eighth Circuit, in <u>United States v. Talley</u>, 16 F.3d 972, 974 (8th Cir. 1994) ("specifically recognized that cooperation between state and federal authorities <u>does</u> <u>not</u> amount to unlawful collusion.") (emphasis added).

Therefore, Defendant's Supplemental Motion to Compel Attorney for the Government to Disclose Favorable Evidence, [Docket No. 67], is denied.

---

[11] Federal Rule of Criminal Procedure 16 states that the government must permit the defendant to inspect and copy documents if the documents are "within the government's possession, custody, or control" and are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E).  Evidence is material under Rule 16 if it is "helpful to the defense," <u>United States v. Vue</u>, 13 F.3d 1206, 1208 (8th Cir. 1994), and "enables a defendant significantly to alter the quantum of proof in his or her favor." <u>United States v. Baker</u>, 453 F.3d 419, 425 (7th Cir. 2006). The defendant bears the burden of showing materiality under Rule 16. <u>United States v. Jean</u>, 891 F.3d 712, 715 (8th Cir. 2018); <u>Vue</u>, 13 F.3d at 1208. Under Federal Rule of Criminal Procedure 16, a showing of materiality requires more than "a mere conclusory allegation" of the requested information's materiality. <u>United States v. Krauth</u>, 769 F.2d 473, 476 (8th Cir. 1985) (discussing predecessor Rule 16(a)(1)(C)) (citation omitted); <u>see</u>, <u>United States v. Mandel</u>, 914 F.2d 1215, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense.").

Moving next to his initial Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51], Defendant seeks disclosure of evidence favorable to him which would generally fall within the typical authority of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Giglio v. United States</u>, 405 U.S. 150 (1972); and their progeny. (<u>See</u>, Def.'s Mot. [Docket No. 51]).

To the extent Defendant's Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51], seeks materials specifically responsive to <u>Brady</u>, <u>Giglio</u>, and their progeny, Defendant's Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51], is granted, as set forth herein. The Government will disclose any and all remaining and/or subsequently discovered, obtained, or obtainable material responsive to <u>Brady</u> to the Defense as soon as said responsive materials are discovered by the Government.[12] The Government will disclose materials which are responsive to <u>Giglio</u> and related to the impeachment of the Government's witnesses to be called to testify at trial by no later than seven (7) days before trial or when the presiding trial judge requires disclosure of trial witnesses, whichever is earlier.[13]

## VI.    Defendant's Motion for Discovery and Inspection. [Docket No. 66].

Defendant seeks disclosure of any written, recorded, or oral statements made by Defendant or copies thereof in the possession, custody, or control of the Government, as well as,

---

[12] The Court notes that in <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), the United States Supreme Court "emphasized the discretion of the *prosecutor*, not the trial judge, in deciding what evidence is producible under <u>Brady</u>." <u>United States v. Garrett</u>, 238 F.3d 293, 304 n.4 (5th Cir. 2000) (emphasis added). The Sixth Circuit has also explained that "while the <u>Brady</u> rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." <u>United States v. Clark</u>, 957 F.2d 248, 251 (6th Cir. 1992). That being said, "[i]f [the Government] fails to comply adequately with a discovery order requiring it to disclose <u>Brady</u> material, it acts at its own peril." <u>Id</u>. Accordingly, the Court encourages the Government to carefully evaluate the materials in its possession in light of a liberal understanding of its <u>Brady</u> obligations.

[13] The Government's disclosure of materials responsive to <u>Giglio</u> and related to the impeachment of the Government's witnesses to be called at trial shall include the criminal history, if any, for each trial witness.

a copy of his criminal history. (See, Def.'s Mot. [Docket No. 66]). Furthermore, Defendant requests permission to inspect and/or copy books, papers, documents, photographs, and tangible objects in the possession, custody, or control of the Government and which are material to the preparation of the defense or are intended for use by the Government as evidence in its case-in-chief at trial, or were obtained from or belonged to the Defendant.

Defendant also requests permission to inspect and copy the results of any physical or mental examinations or scientific tests or experiments. Pursuant to Rule 16(a)(1)(G), Defendant requests the identification of any expert the Government intends to use in its case-in-chief, including expert witnesses' qualifications and opinions, as well as, the substance of the expert's intended testimony.

In its written response to Defendant's Motions, the Government asserts that it has already disclosed substantial materials pursuant to Rule 16. The Government further asserts that it will continue to comply with its obligations.

Defendant's Motion for Discovery and Inspection, [Docket No. 66], is granted as to any subsequently acquired materials or information which are specifically responsive to Rule 16, which shall be disclosed to the Defense as soon as said responsive materials are discovered by the Government and in any event by no later than twenty-one (21) days before trial, except with respect to initial expert disclosures and forensic reports, which shall be disclosed as soon as practicable and in any event by no later than thirty (30) days before trial. Notice and disclosure of any rebuttal expert reports is to be made no later than ten (10) days before trial.

**VII.    Defendant's Motion for Government Agents to Retain Rough Notes. [Docket No. 68].**

Defendant requests an Order from the Court requiring any law enforcement agent, to retain and preserve all rough notes taken as part of their investigations, whether or not the

contents of such rough notes are incorporated in official records. (See, Def's Mot. [Docket No. 68]).

Defendant's Motion is granted regarding rough notes as to retention only at this time. If Defendant seeks production or disclosure of rough notes, he will need to bring a separate motion for such production.

## VIII.   Defendant's Motion for Ex Parte Review of Alleged Victim's Medical Records. [Docket No. 69].

Defendant seeks an Order of this Court "requiring disclosure followed by an ex parte review of the alleged victim's medical records." (Def.'s Mot. [Docket No. 69] at 1). In his memorandum, Defendant asserts that he seeks authority to subpoena the alleged victims medical "records and, with eventual notice to the victim, for the Court to ultimately conduct an in camera review." (Def.'s Mem. [Docket No. 86] at 21].

Defendant avers that such a disclosure is required because while "[t]he alleged victim is afflicted with a venereal disease," Defendant "is not so infected," and therefore, according to Defendant, the source of her venereal disease "is critical to [Defendant's] alternative perpetrator defense." (See, Def.'s Mot. [Docket No. 69]; Def.'s Mem. [Docket No. 86] at 21–26). Defendant also argues that disclosure of the alleged victim's medical records is required because the alleged victim, while in a "treatment facility," made statements to a fellow patient which are inconsistent with the alleged conduct underlying the present Indictment. (Def.'s Mem. [Docket No. 86] at 22–23). Defendant fails to specify the location from which any such medical records would be procured or limit the temporal scope of his request for medical records. Instead, as presented to the Court, Defendant request authority to subpoena all of the alleged victim's medical records without limitation to any specific provider or to any particular time period.

Defendant's failure to specify the particular records sought is, however, inconsequential to this Court's present analysis because Defendant's Motion is premature. To the extent Defendant's Motion seeks "in camera" review, there are not now any medical records before the Court for such a review. To the extent Defendant's Motion seeks authority to subpoena the alleged victim's medical records, Defendant has not yet complied with the Federal Rules of Criminal Procedure.

In relevant part, Rule 17 of the Federal Rules of Criminal Procedure provides as follows:

> After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Fed. R. Crim. P. 17(c)(3). On its face, Rule 17(c)(3) plainly provides that, unless exceptional circumstances exists, the Court must require notice be given to the victim before entering an order authorizing a subpoena for the victim's personal or confidential information. See, Fed. R. Crim. P. 17(c)(3); United States v. Hawk, 17-cr-50 (PJS/LIB), Order [Docket No. 99] (D. Minn. Aug. 11, 2017).[14]

The notice to the victim required by Rule 17(c)(3) is not, as Defendant suggests, a perfunctory, "eventual notice" to merely inform the victim of the subpoena. (See, Def.'s Mem. [Docket No. 86] at 21). Instead, notice is provided to the victim to permit the victim sufficient time to "move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3).

Defendant does not allege that any exceptional circumstances exist in the present case. Nevertheless, Defendant seeks an Order of this Court authorizing him to subpoena the alleged

---

[14] Any such request for a subpoena must first address the particularity problems previously discussed, otherwise any notice to a victim as required by Rule 17(c)(3) would be presented in a vacuum.

victim's personal and confidential information <u>before</u> providing specific notice to the alleged victim.

Defendant's request is in stark contradiction to Rule 17(c)(3) of the Federal Rules of Criminal Procedure. Under the circumstances of the present case and on the record now before the Court, the undersigned will not enter an Order authorizing Defendant to subpoena the alleged victim's medical records without the alleged victims having first been provided with sufficient notice of the subpoenas as required by Rule 17.

Therefore, Defendant's Motion for Ex Parte Review of Alleged Victim's Medical Records, [Docket No. 69], is denied.

If Defendant persist in his request to subpoena the medical records of the alleged victim in the present case, then Defendant must specify the particular provider and medical records that he wishes to subpoena, e.g., the identification of the facility upon which the subpoenas will be served and the breadth of the records the subpoena will seek. <u>After</u> Defendant's identification of the particular medical records he seeks, Defendant <u>must</u> then provide—through the Government's counsel—notice of said request to the alleged victim.[15] After the alleged victim has been provided said notice, the alleged victim will be permitted thirty days in which to "move to quash or modify the subpoena or otherwise object" to Defendant's request for subpoena.

## IX.    Defendant's Motion for Disclosure of Alleged Victim's Sex Partners. [Docket No. 70].

Defendant seeks "an Order of this Court requiring the Government to disclose the contemporaneous sex partners of the alleged victim." (Def.'s Mot. [Docket No. 70]). Defendant acknowledges that the Government is not in physical possession of this information, however,

---

[15] In its written materials, the Government asserted that it "would be amenable to informing the victim" of Defendant's request for subpoenas and informing her of "her rights under the Federal Rules of Criminal Procedure." (Gov't Mem. [Docket No. 91] at 12).

Defendant request this Court compel the Government to obtain from the alleged victim the information so the Government may then disclose said information to Defendant. (Def.'s Mem. [Docket No. 86] at 28–29 ("All the prosecution has to do is ask her, before we do at trial.")).

In support of the present Motion, Defendant relies heavily on Holmes v. South Carolina, 547 U.S. 319 (2006). Defendant's reliance on Holmes is, however, misplaced. Holmes involved only the admissibility of such evidence. The question now before the Court is not a question of admissibility; instead, the issue now before the Court is one of compelling discovery—specifically, whether the Court should compel the Government to interrogate its own prospective witness to provide pretrial disclosure of certain evidence to Defendant. Holmes provide no insight into the question now before the Court. See, Id.

Defendant also conclusorily asserts that the source of the alleged victim's venereal disease is Brady material, and the Government is required to seek out exculpatory information within its control. (See, Def.'s Mem. [Docket No. 86] at 28). The Court finds Defendant's argument here to be unpersuasive. Although the Government has an obligation to produce Brady materials within its possessions and control and, under certain circumstances, within the possession and control of its agents, Defendant has failed to highlight any case, statute, or constitutional provision requiring the Government interview a prospective trial witness for the purpose of creating material for immediate production to Defendant ostensibly pursuant to Brady. Moreover, on the record now before the Court, Defendant has failed to present any specific facts or argument articulating how the identity of the source of the alleged victim's venereal disease is Brady material in any way exculpatory to the indicted charges in this case.

Federal Rule of Criminal Procedure Rule 16 is the primary avenue available to a criminal defendant seeking discovery. United States v. Siewert, No. 08-cr-4 DWF/SRN, 2008 WL

3165852, at *2 (D. Minn. June 10, 2008) (citing 3D *Federal Practice and Procedure* Rule 16 Summary, at 206 (2008 ed.)). Generally, a criminal defendant has no general constitutional right to discovery from the Government beyond Rule 16. <u>Siewert</u>, 2008 WL 3165852, at *2.

On the record now before the Court, Defendant has failed to highlight any case, statute, or constitutional provision which would entitle him to immediate, pretrial disclosure of the identity of the alleged victim's sexual partners under the circumstances of the present case, much less any case, statute, or constitutional provision which would require the Government to compel a prospective trial witness to create such information. The Court notes that although Defendant's Motion references "contemporaneous sex partners," Defendant's Motion ostensibly seeks the identification of <u>all</u> of the alleged victim's previous sexual partners, especially in light of Defendant's discussion regarding needing to identify the "source" of the alleged victim's venereal disease without any reference or indication as to when she alleged contradicted said venereal disease. This Court will not compel the Government to compel the alleged victim to obtain the identity of <u>all</u> of her previous sexual partners.

Therefore, Defendant's Motion for Disclosure of Alleged Victim's Sex Partners, [Docket No. 70], is denied. To be clear, the issue here is one of discovery and immediate disclosure, e.g., whether the Government will be required to compel the alleged victim to create information for the sole purpose of disclosing said information to Defendant. The issue here is not admissibility. The Court's present Order does not address or affect Defendant's ability, subject to the Federal Rules of Evidence or other applicable statute, to question the alleged victim at trial regarding her past sexual partners if she is called as a witness at trial; that is an issue of admissibility for the presiding trial judge.

## X.    Defendant's Motion to Suppress Tribal Court Guilty Plea. [Docket No. 46].

Defendant seeks an Order of this Court "[s]uppressing from use at trial in this case the Defendant's guilty plea entered in Tribal Court . . . ." (Def.'s Mot. [Docket No. 46]). Defendant argues that such suppression is warranted because "the guilt plea is constitutionally inadequate." (Id.).

The Government initially opposed Defendant's present Motion. (Gov't Resp. [Docket No. 72] at 1–2). However, in their written supplemental memorandum, the Government asserted that it "does not intend to use [Defendant's] tribal court conviction in its case-in-chief." (Gov't Mem. [Docket No. 91] at 11).

Therefore, the undersigned recommends that Defendant's Motion to Suppress Tribal Court Guilty Plea, [Docket No. 46], be denied as moot.

## XI.    Defendant's Motion to Suppress Statements. [Docket No. 48].

Defendant seeks an Order of this Court suppressing the statements he made during his September 28, 2020, audio recorded interview with SA Nilson and Criminal Investigator Richards. (Def.'s Mot. [Docket No. 48]). In support of this request, Defendant's sole argument is that "the delay of two days" between his arrest and his initial "appearance in Tribal Court" violated his "due process right of presentment as defined in" Corley v. United States, 556 U.S. 303 (2009), "and thus tainted his statement." (Def.'s Mem. [Docket No. 86] at 2–8).[16] Defendant

---

[16] In his Motion to Suppress Statements, [Docket No. 48], Defendant references a request for "legal counsel" and his "having ingested narcotics" before his September 28, 2020, interview with SA Nilson and Criminal Investigator Richards. In his Memorandum in support of the present Motion, however, he fails to make any argument in support of these assertions, and he fails to assert either a request for legal counsel or "having ingested narcotics" as a basis for suppressing his statements made during the September 28, 2020, interview. Thus, the Court finds that Defendant has abandoned these arguments. Even if the Court were to consider these arguments, said arguments are unpersuasive. On the record now before the Court, including the audio recording of the September 28, 2020, interview, there is no evidence that Defendant ever requested legal counsel, much less made an unequivocal invocation of his right to counsel. See, e.g., Maryland v. Shatzer, 559 U.S. 98, 104 (2010); United States v. Kouayara, 189 F. Supp. 3d 835, 845 (D. Minn. 2016). Moreover, the record now before the Court, including the audio recording of the September 28, 2020, interview and the testimony of SA Nilson, lacks any evidence

relies heavily on the <u>Corley</u> interpretation of the interplay of Rule 5(a) and 18 U.S.C. § 3501(c). (<u>See</u>, Def.'s Mem. [Docket No. 86] at 2–8).

Rule 5(a)(1)(A) of the Federal Rules of Criminal Procedure provides that any "person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(A). Relatedly, Title 18 U.S.C. § 3501(c) provides:

> In any criminal prosecution by the United States . . . , a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, <u>shall not be inadmissible solely because of delay in bringing such a person before a magistrate judge</u> . . . if such a confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such a person within six hours immediately following his arrest or other detention . . . .

18 U.S.C. § 3501(c) (emphasis added).

At the time of his September 28, 2020, statements to SA Nilson and Criminal Investigator Richards, Defendant was not subject to the provision of Rule 5(a) or § 3501(c) as discussed in <u>Corley</u> because Defendant had been arrested on charges <u>only</u> in Red Lake Tribal Court. As the United States Supreme Court has explained, "it is evident" from the text of § 3501(a) "that the 'arrest or other detention' of which the subsection speaks must be an 'arrest or other detention' for a violation of *federal* law." <u>United States v. Alvarez-Sanchez</u>, 511 U.S. 350, 358 (1994)

---

demonstrating that Defendant's alleged use of narcotics the night before the interview caused Defendant's will to be overborn to the level of rendering him unable to understand his rights and knowingly waive them. See, e.g., <u>United States v. Turner</u>, 157 F.3d 552, 555 (8th Cir. 1998); <u>United States v. Casal</u>, 915 F.2d 1225, 1229 (8th Cir. 1990); <u>United States v. Gaddy</u>, 532 F.3d 783, 788–89 (8th Cir. 2008). The record now before the Court demonstrates that at the beginning of the September 28, 2020, interview, Defendant was advised of his rights; Defendant waived his rights ultimately signing an Advice of Rights form; and Defendant's waiver of his rights was made intelligently, knowingly, and voluntarily.

(emphasis in original).[17] A "'delay' cannot occur until an officer has a duty to present a person to a federal magistrate judge," and "such a duty 'does not arise until the person has been arrest for a *federal* offense.'" United States v. Pugh, 25 F.3d 669, 674 (8th Cir. 1994) (emphasis in original) (quoting Alvarez-Sanchez, 511 U.S. at 358). Thus, the presentment obligation imposed by Rule 5(a)(1)(A), implicitly referenced by 18 U.S.C. § 3501(c), does not arise until a person has been arrested for a federal offense.

In the present case, Defendant was arrest on September 27, 2020, by Red Lake Tribal Police Officers for a violation of Red Lake Tribal law. Defendant was not indicted for alleged violations of federal law based on the alleged conduct underlying the present case until June 17, 2021. (Indictment [Docket No. 1]). There is no delay in Defendant's presentment because, at the time he made the statements which he now seeks to suppress, "there was no obligation to present him to a federal magistrate judge." Pugh, 25 F.3d  674.

Defendant avers that the above discussed presentment requirements did apply to him on September 28, 2020, even though he was under arrest on only a charge in a Red Lake Tribal Court, because there exists "identifiable collusion" between the federal law enforcement and Red Lake law enforcement. (See, Def.'s Mem. [Docket No. 86] at 8). Specifically, Defendant conclusorily asserts that SA Nilson "was acting with an identifiable collusion, seeking out a confession to be used later in federal court." (Id.). The Court finds Defendant's assertions here to be unpersuasive.[18]

Defendants mere conclusory allegation of "collusion" between Red Lake law enforcement and the federal government is insufficient to demonstrate the "rare scenario" of

---

[17] Although Alvarez-Sanchez was decided before Corley, neither the holding nor rationale of Corley alters the holding of Alvarez-Sanchez.

[18] The Court also finds unpersuasive Defendants implied assertion that SA Nilson use of the term "we" during the September 28, 2020, interview somehow indicates irrefutable proof of improper collusion between the federal government and the Red Lake Police Department.

"improper collaboration" and "collusion" contemplated in <u>Alvarez-Sanchez</u>. Defendant's speculative and conclusory allegation merely points to typical and routine cooperation between two different law enforcement agencies who may have concurrent jurisdiction over alleged criminal conduct (i.e., Red Lake law enforcement and the federal government)—there is in fact no factual evidence in the present record of collusion.  <u>See</u>, <u>United States v. Williams</u>, 104 F.3d 213, 216 (8th Cir. 1997) (noting that both the Supreme Court, in <u>Bartkus v. Illinois</u>, 359 U.S. 121, 123 (1959), and the Eighth Circuit, in <u>United States v. Talley</u>, 16 F.3d 972, 974 (8th Cir. 1994), "specifically recognized that cooperation between state and federal authorities does not amount to unlawful collusion."). "Routine cooperation between local and federal authorities does not establish collusion; the exchange of information among law enforcement is important to crime prevention." <u>United States v. Begay</u>, No. 21-cr-119 (NEB/LIB), 2022 WL 683090, at *5 (D. Minn. Mar. 8, 2022) (discussing the cooperation between Red Lake law enforcement and federal law enforcement). Indeed, "cooperation between federal and state officials not only do[es] not offend the Constitution but [is] commonplace and welcome." <u>United States v. Leathers</u>, 354 F.3d 955, 960 (8th Cir. 2004).

Therefore, the undersigned recommends that Defendant's Motion to Suppress Statements, [Docket No. 48], be denied.

## XII. Defendant's Second Motion to Dismiss. [Docket No. 65].

Defendant seeks an Order of this Court dismissing the Indictment underlying the present case. (Def.'s Mot. [Docket No. 65]). Defendant argues that his prosecution in this federal Court, after his prosecution, conviction, and sentencing in Red Lake Tribal Court, violates his

constitutional right to be free from double jeopardy and his constitutional right to equal protection under the laws. (Def.'s Mem. [Docket No. 86] at 12–21).[19]

The Court finds each of Defendant's arguments to be unpersuasive.

Defendant first argues that his prosecution in this Court subjects him to double jeopardy. (Id.). Defendant concedes that his double jeopardy claim is foreclosed by recent United States Supreme Court precedent, but he asserts that his "concern is still valid." (Id. at 12). He offers no other argument in support of his double jeopardy claim. It is recommended that the Motion to Dismiss be denied to the extent the Motion purports to rely on the double jeopardy argument.

Despite Defendant's belief that his "concern is still valid," Defendant's double jeopardy claim is completely precluded by long-standing "dual sovereign" precedent from the United States Supreme Court, see, United States v. Lanza, 260 U.S. 377 (1922); United States v. Wheeler, 435 U.S. 313 (1978), which the United States Supreme Court recently re-affirmed and further clarified in Denezpi v. United States, 142 S. Ct. 1838 (2022). While "[t]he Double Jeopardy Clause protects a person from being prosecuted twice" for the same offense, "[a]n offense defined by one sovereign is necessarily different from an offense defined by another, even when the offenses have identical elements. Thus, a person can be successively prosecuted

_____

[19] Defendant also argues a "third ground for dismissal . . . premised on the admittedly discretionary DOJ Petite Policy." (Id. at 20). Under the Petite policy, "a United States attorney may not prosecute a person in federal court, 'if the alleged criminality was an ingredient of a previous state prosecution against that person' unless the federal prosecution 'is specifically authorized in advance by the [DOJ] itself, upon a finding that the prosecution will serve 'compelling interests of federal law enforcement.''" United States v. Stately, No. 19-cr-342 (ECT/LIB), 2021 WL 1321269, at *16 (D. Minn. Jan. 11, 2021) (quoting United States v. Basile, 109 F.3d 1304, 1308 (8th Cir. 1997)). Defendant's sparse argument related to the Petite policy, however, merely mirrors his assertions related to his equal protection argument. (Id. (noting that although "Petite policy arguments have been rejected on dual sovereignty grounds," "Castro-Huerta eviscerates that distinction.")). Defendant's assertions related to the Petite policy are unpersuasive for the same reasons his equal protection argument is unpersuasive. Moreover, the Eighth Circuit Court of Appeals has repeated held that the Petite policy is a discretionary policy which "does not confer any substantive rights on a criminal defendant." United States v. Lester, 992 F.2d 174, 176 (8th Cir. 1993). Thus, the Government's purported violation of the Petite policy cannot form a basis for Defendant to seek dismissal of the present Indictment. See, Id.

for the two offenses without offending the Clause." Denezpi v. United States, 142 S. Ct. 1838, 1842 (2022).

Next, Defendant argues that his prosecution in this federal Court, after his prosecution in Red Lake Tribal Court based on the same underlying conduct, violates his right to equal protection under the laws. (Def.'s Mem. [Docket No. 86] at 13–20).[20] Defendant here too concedes that this argument has previously been routinely and repeatedly rejected by the Court's pursuant also to the dual sovereign doctrine, (Id. at 14–15, 20); however, Defendant now asserts that the dual sovereign doctrine is no long a sufficient basis upon which to reject his equal protection argument after the United States Supreme Court's opinion in Oklahoma v. Castro-Huerta, 142 S.Ct. 2486 (2022), which Defendant describes as having "scraped away what had been the settle landscape of American Indian law." (Def.'s Mem. [Docket No. 86] at 15). Defendant avers that following the Court's opinion in Castro-Huerta, including the Court's interpretation therein of Public Law 280, "the claim that the tribe has 'inherent sovereign authority,' is no longer persuasive" because "[t]he old definition of 'Tribal sovereignty' . . . carries no weight in light of" the assertion in Castro-Huerta that "Indian country is part of a state, not separate from a State." (Def.'s Mem. [Docket No. 86] at 17 (internal citations omitted)). Thus, according to Defendant, "it cannot be said that Red Lake is a sovereignty with respect to enforcement of its criminal law." (Id.).

Defendant's argument here is entirely without merit. Nothing in Castro-Huerta diminishes the Red Lake Nation's existence as a distinct sovereign entity or the long standing dual sovereign doctrine. See, Oklahoma v. Castro-Huerta, 142 S.Ct. 2486 (2022). Notwithstanding the majority opinions' departure from almost two hundred years of well settled

---

[20] For his equal protection claim, Defendant asserts that "[t]here are two classes of defendants at issue. Those Indians in Tribal Court, who like [him], are subsequently charged with identical federal crimes, and those defendants in State court who, once convicted of an identical federal crime, are not indicted." (Id. at 14).

federal Indian law, Castro-Huerta, 142 S.Ct. at 2505, the effect of Castro-Huerta is limited exclusively to the narrow holding and specific facts of Castro-Huerta—"the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country," Id. at 2504–05, provided Congress has not otherwise specifically precluded such state action in Indian Country; Castro-Huerta, stands only for the proposition that Congress has not limited the ability of the State of Oklahoma to prosecute non-Indians for crimes committed within Indian country in Oklahoma.

Defendant's equal protection argument has been repeatedly rejected by the Courts based on long standing precedent which without question remains valid today. See, e.g., United States v. Sumner, No. 13-cr-71 (2) (RHK), 2013 WL 5923084, at *13 (D. Minn. Oct. 31, 2013) ("the federal courts have repeatedly held that treating Indian tribal members differently from non-Indians for incidents arising in Indian country does not violate either due process or equal protection."); United States v. Antelope, 430 U.S. 641, 646–47 (1977); United States v. Stately, No. 19-cr-342 (ECT/LIB), 2021 WL 1321269, at *15–18 (D. Minn. Jan. 11, 2021), report and recommendation adopted, 2021 WL 1187152 (D. Minn. Mar. 30, 2021); United States v. Cavanaugh, 643 F.3d 592, 605 (8th Cir. 2011). "[D]istinguishing between tribal court and state defendants is not a race-based classification." Stately, 2021 WL 1321269, at *17. Instead, it is a political status distinction "based upon 'the quasi-sovereign status of [Indian tribes] under federal law.'" Id. Thus, Defendant's equal protection claim fails without question.[21]

---

[21] Indeed, Castro-Huerta, although stating a new, general doctrine of federal Indian law, could not have any application to the Red Lake Nation, the State of Minnesota's criminal jurisdiction within the Red Lake Nation, nor the Defendant's present federal prosecution for crimes allegedly occurring within the boundaries of the Red Lake Nation. Castro-Huerta provides only that a state may have concurrent jurisdiction along with the federal government's clear authority to prosecute non-Indians for crimes committed against Indians in Indian Country. Here, the Defendant is an Indian accused of committing crimes within the boundaries of the Red Lake Nation. Accordingly, vis-à-vis Defendant, Castro-Huerta has worked no change whatsoever in the well established federal Indian law applicable to Defendant's federal prosecution as more fully discussed above. Moreover, Castro-Huerta has nothing to say about Defendant's earlier prosecution in the Red Lake Tribal Court, since even Castro-Huerta

Therefore, the undersigned recommends that Defendant's Second Motion to Dismiss the Indictment, [Docket No. 65], be denied.

## XIII.  Conclusion

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The Government's Motion for Discovery, [Docket No. 14], is **GRANTED**, as set forth herein;

2. Defendant's Motion to Dismiss Indictment, [Docket No. 47], is **TERMED**;

3. Defendant's Motion for Disclosure of Grand Jury Transcripts, [Docket No. 49], is **DENIED**;

4. Defendant's Motion for Jencks Act Materials, [Docket No. 50], is **DENIED**;

5. Defendant's Motion for Disclosure of Impeaching Information and for Disclosure of Exculpatory Evidence, [Docket No. 51], is **GRANTED**, as set forth herein;

---

must acknowledge the continuing sovereign right of the Red Lake Nation to prosecute crimes by Indians committed within Indian Country, as well as, the federal government's concurrent sovereign right to prosecute those same crimes without giving offense to either the concepts of double jeopardy or equal protection as was also more fully discussed above. Finally, the majority opinion in Castro-Huerta reasoned that its new rule could allow extending Oklahoma state criminal jurisdiction into Indian Country within Oklahoma as it relates solely to crimes committed therein by non-Indians against Indians because Congress had not acted to limit such a narrow extension of state criminal jurisdiction either by way of any Treaty covering Indian Country within Oklahoma, the federal legislation establishing Oklahoma statehood, or by not explicitly including Oklahoma by name within its passage of Public Law 280. Castro-Huerta's limited new rule has no such application for the Red Lake Nation as no similar relevant analysis has been, nor could be, undertaken here. First, there are no ratified treaties establishing the territory of the Red Lake Nation as a reservation within ceded lands;  it is clearly recognized that as undisputedly unceded territory, the land within the boundaries of the Red Lake Nation are original Anishinabe homeland. Second, with the passage of Public Law 280, the State of Minnesota has exercised concurrent state criminal jurisdiction for all purposes over all Indian Country within the State of Minnesota since the 1950s except for the Red Lake Nation and the Boise Forte Nation (pursuant to subsequent retrocession as provided for within PL 280) which were, unlike Indian Country in Oklahoma, specifically excluded by Congress from being subject to the concurrent state criminal jurisdiction of the State of Minnesota. Accordingly, even Castro-Huerta notwithstanding, for the Red Lake Nation and the Boise Forte Nation, concurrent criminal jurisdiction for all purposes remains solely with the Tribes and with the federal government. Therefore, Defendant's attempts to argue there has been a change in applicable federal Indian law for purposes of this present case fails on the basis of long-standing and currently viable federal Indian law as has been applied to his second motion to dismiss above.

6.  Defendant's Motion for Discovery and Inspection, [Docket No. 66], is **GRANTED**, as set forth herein;

7.  Defendant's Supplemental Motion to Compel Attorney for Government to Disclose Favorable Evidence, [Docket No. 67], is **DENIED**;

8.  Defendant's Motion for Government Agents to Retain Rough Notes, [Docket No. 68], is **GRANTED**, as set forth herein;

9.  Defendant's Motion for Ex Parte Review of Alleged Victim's Medical Records, [Docket No. 69], is **DENIED**; and

10. Defendant's Motion for Disclosure of Alleged Victim's Sex Partners, [Docket No. 70], is **DENIED**.


Furthermore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  Defendant's Motion to Suppress Tribal Court Guilty Plea, [Docket No. 46], be **DENIED as moot**;

2.  Defendant's Motion to Suppress Statements, [Docket No. 48], be **DENIED**; and

3.  Defendant's Second Motion to Dismiss, [Docket No. 65], be **DENIED**.


Dated: October 11, 2022                          s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.